UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD EDWARD GREINER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CV 1509 DDN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Ronald Edward Greiner Jr. for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401- 434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is reversed and the action is remanded for further proceedings.

## I. BACKGROUND

Plaintiff was born in 1964 and was 49 years old at the time of his hearing. (Tr. 34, 73.) He filed his application on December 2916, 2011, alleging an August 30, 2011 onset date, and alleging disability due to depression, bipolar disorder, anxiety, sleep disorder, and an eating disorder. (Tr. 154-60, 185.) His application was denied initially, and he requested a hearing before an administrative law judge (ALJ). (Tr. 73, 81-82.)

On June 17, 2014, following a hearing, the ALJ issued a decision, concluding that plaintiff was not disabled under the Act. (Tr. 13-27.) The Appeals Council denied his

request for review. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY[1]

On April 3, 2012, plaintiff saw Timothy Leonberger, Ph.D., a clinical neuropsychologist, for a psychological evaluation at the state agency's request. (Tr. 271-74.) Plaintiff reported he lived with his wife, three children, and 78-year old father. He helped his father with medication, made his appointments at the VA, and drove him to appointments. At home, plaintiff did laundry, drove, cleaned house, went grocery shopping, and prepared simple meals. He and his wife occasionally went to movies or out to dinner, and he sometimes got together with friends to play music. (Tr. 273.)

Plaintiff's speech was normal, but droning, and his thinking was logical and sequential. His attention and concentration were fair. He rarely made eye contact. Plaintiff reported past suicidal ideation, but denied current suicidal ideation or intent. Dr. Leonberger concluded that plaintiff was "apathetic, unmotivated, and chronically depressed" and believed he had a chronic low level depression with subdued affect. (Tr. 273.) He noted that although plaintiff claimed to have panic attacks, he described them as lasting all day long. He also noted that plaintiff complained about chronic pain, but seemed to be able to do quite a bit, including helping his father and performing chores around the house. Dr. Leonberger diagnosed plaintiff with recurrent major depressive disorder, anxiety disorder, and personality disorder. (Tr. 273-74.)

Dr. Leonberger believed that plaintiff had mild to moderate limitations in activities of daily living; moderate to marked limitations in social functioning; moderate to marked limitations in concentration, persistence, and pace; and moderate to marked deterioration or decompensation in work or work-like settings. He assigned a GAF score of 50,

---

[1] The sole basis of this appeal is the ALJ's evaluation of plaintiff's mental condition. Because plaintiff does not challenge the ALJ's evaluation of his physical impairments, the court will limit its discussion to the issues raised by plaintiff.

indicating "serious" symptoms. He opined that plaintiff was able to handle funds in his own best interest. (Tr. 274.)

On April 12, 2016, Robert Cottone, Ph.D., a psychologist, completed a Mental RFC Assessment. He opined that plaintiff had marked limitations in the ability to understand and remember detailed instructions and to carry out detailed instructions. He had moderate limitations in his ability to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to set realistic goals or to make plans independently of others. Dr. Cottone opined that plaintiff was not significantly limited in all other areas. (Tr. 275-87.)

Plaintiff was treated by Eduardo Garcia, M.D., a psychiatrist, every three months from February 3, 2011 to December 5, 2013. (Tr. 527-51.) On March 9, 2011, Dr. Garcia noted plaintiff was having trouble at work and was depressed. (Tr. 549.) On October 19, 2011, Dr. Garcia noted he was not improving on a psychotherapeutic level. Plaintiff had given up his job and applied for disability. (Tr. 547.) On January 17, 2012, his condition was unchanged; his mood was depressed and he reported that he had a lot on his plate. He stated he was very busy applying for disability and being a house dad. (Tr. 545-46.) Plaintiff thought that Cymbalta, an antidepressant, caused increased shaking. Dr. Garcia noted his depressed mood and worked with him on coping skills. (Tr. 545.) On April 19, 2012, he was "not real good." (Tr. 541.) His mood was depressed and he had moderate restlessness. He reported that he had taken Abilify, an anti-psychotic, for seven days before stopping it. Dr. Garcia reported that he was focused on disability. He had decreased concentration and activity and expressed a desire to try Abilify again. (Tr. 543-44.)

On July 3, 2012, plaintiff told Dr. Garcia that he had been going through a lot. (Tr. 541.) He did not like leaving the house. He was trying to get disability and spending much of his savings. He had slight decrease in concentration. He had not taken his Abilify. Dr. Garcia noted he was depressed and nervous. (Tr. 541-42.) On November 1, 2012, plaintiff was slightly depressed and felt stressed out by most things. (Tr. 539-40.)

On February 14, 2013, Dr. Garcia assigned him a GAF score of 55, indicating "moderate" symptoms. (Tr. 538.) He had an anxious affect, with fair judgment, fair insight, decreased concentration, and constricted affect. (Tr. 537.) In March 2013 Dr. Garcia noted his condition was worsening. (Tr. 536.)

Plaintiff was hospitalized at St. Anthony's Medical Center June 14-21, 2013, after he ingested medication in a possible suicide attempt. A toxicology report revealed THC (marijuana) and benzodiazepines. Plaintiff was anxious, agitated, and depressed. The cause of his agitation was unclear; plaintiff apparently reported that he became upset because his son attacked him and because his band of thirty years was breaking up. His discharge diagnoses were recurrent severe major depression and arthritis. Plaintiff stated that Cymbalta had been very effective. He was significantly improved at discharge. (Tr. 450, 462, 491-94).

By July 2013, Dr. Garcia thought his condition was improving, but he still exhibited depressed mood. He had fair insight and fair judgment. Dr. Garcia noted chronic depression. (Tr. 533-34.) Later that month Dr. Garcia changed his medication to stabilize his mood. (Tr. 532.)

On July 22, 2013, Dr. Garcia completed a Depression and Anxiety Questionnaire. Dr. Garcia diagnosed a depressive syndrome and checked boxes indicating plaintiff's depressive symptoms, including loss of interest in activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. He also indicated that plaintiff had no restrictions of activities of daily living; mild difficulties in maintaining social function; marked deficiencies of concentration, persistence or pace

resulting in failure to complete tasks in a timely manner; and marked difficulties in episodes of deterioration in work or work-like settings. (Tr. 430-32.)

In September 2013, he was stable and improving and he reported doing pretty well that month. Dr. Garcia changed his medication due to cost. (Tr. 530.) By his next appointment in December 2013 he was "not real well" with depressed mood and anxious affect. (Tr. 527-29.)

Plaintiff was hospitalized at St. Anthony's Medical Center February 15-17, 2014, for a drug overdose. He had ingested 39 tablets of trazodone and several beers after his wife had left him, taking their two daughters. He had been recently depressed but denied any suicide attempt. He stated that that he was okay and wanted to go home; he did not want to leave his elderly father at home alone. He reported that his regular psychiatrist was Dr. Garcia. His insight and judgment were impaired. Ahmad Ardekani, M.D., diagnosed recurrent major depression, panic, anxiety, and chronic pain. He was discharged and transferred to Hyland Behavioral Health for continued inpatient treatment. (Tr. 552-84.)

In February 3, 2014 correspondence, Kevin Shuler, Ph.D., a psychologist, wrote the following. He had seen plaintiff in over 25 sessions of psychotherapy during the period from 1999 through 2010. Plaintiff had severe symptoms of anxiety and depression. He appeared motivated to contain or control these symptoms and would attempt to comply with recommendations and cognitive behavioral strategies in dealing with them. Plaintiff's anxiety and depressive symptoms, which included panic and suicidal episodes, would recur and were extremely resistant to treatment. He believed that plaintiff was motivated to keep his job and maintain his employability and made serious efforts to treat his symptoms. He believed that plaintiff's psychiatric condition was severe and disabling. He diagnosed recurrent major depressive disorder without psychotic features and anxiety disorder. He believed plaintiff was disabled and would be a fair candidate for disability. (Tr. 448.)

**ALJ Hearing**

On March 3, 2014, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 34-72.) He had worked for twenty eight years as a custodian at two churches. He stopped working at the end of August 2011 because he could no longer perform the job mentally and physically. He was depressed and had panic attacks. He had difficulty with the regular responsibilities of the job, including walking stairs, climbing ladders, etc. He was mentally a "wreck." (Tr. 41.) He was easily overwhelmed. He cried, had panic attacks at work, and found it difficult to drive. His panic attacks were characterized by uncontrolled shaking. (Tr. 39-41.)

He saw Dr. Schuler for psychotherapy between 1999 and 2010 and stopped going because he could not afford it and was too afraid to drive to the sessions. He felt worse when he stopped treatment but he was afraid to go. (Tr. 41-42.)

He lives with his 80 year-old father in a house that he rents. His wife left him and they are separated. They have three children, ages, 10, 12, and 20. His wife paid his last rent payment. He needs to lie down at least 12 times per day for five to ten minutes at a time. He takes a sleep aid at night. (Tr. 42-46.)

Pamela Tucker, a vocational expert (VE), was asked to assume a hypothetical individual with the same age, education and vocational background as plaintiff. The individual could lift and carry 10 pounds frequently and 20 pounds occasionally; sit for 40 minutes at a time for a total of four hours in an eight-hour day; stand for a total of 20 minutes at a time for a total of two hours in an eight hour day; walk for a maximum of 20 minutes at a time for a total of two hours in an eight-hour work day. The individual would be limited to frequent reaching, handling, fingering, feeling, pushing, and pulling with the right upper extremity; frequent reaching, feeling, pushing, and pulling with the left upper extremity; and occasional operation of foot controls on both sides, bilaterally. He can never climb, balance, stoop, kneel, crouch, or crawl; and he must avoid all hazards, such as moving machinery, unprotected heights, and commercial driving. The VE testified that plaintiff could not perform his past relevant work as a janitor because the work exceeded

his residual functional capacity but could perform other work that exists in the national economy, including office helper, mail clerk, and laborer. (Tr. 46-48.)

The ALJ asked the VE to assume a second hypothetical with the same characteristics as the first but with additional limitations. The individual would be limited to work at a simple, routine, and repetitive pace without strict production quotas or fast-paced requirements in an environment with few changes in the routine and with only occasional, superficial interaction with coworkers and supervisors and none with the general public. The VE testified that those additional limitations would not reduce or eliminate any of the jobs previously identified. Under a third hypothetical the ALJ asked the VE to assume all of the same and that the individual would need to take as many as 12 unscheduled breaks per day lasting from five minutes to an hour. The VE testified that hypothetical would eliminate any jobs in the competitive market. (Tr. 48.)

### III.   DECISION OF THE ALJ

On June 17, 2014, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 13-27.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since his August 30, 2011 alleged onset date. At Step Two, the ALJ found, among other things, that plaintiff had the severe impairments of dysfunction of both knees following left arthroscopic surgery; disorder of the cervical spine after an anterior cervical discectomy and fusion; affective disorder; anxiety disorder; personality disorder; and opioid dependence disorder. At Step Three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15.)

At Step Four, the ALJ found that plaintiff had the RFC to perform light work with the following additional limitations. He is limited to sitting forty minutes at a time and four hours in an eight hour workday; standing for twenty minutes at one time and for two hours in an eight hour workday; walking for twenty minutes at one time and two hours in an eight hour workday; frequent reaching, handling, fingering, feeling, pushing, and

pulling with the bilateral extremities; and occasional operation of foot controls bilaterally. He must never climb, balance, stoop, kneel, crouch or crawl. He must avoid all exposure to unprotected heights, moving machinery and operating a motor vehicle. He is limited to simple, routine, repetitive work without strict production quotas or fast paced requirements; few changes in routine; occasional, superficial interaction with coworkers and supervisors; and no contact with the general public. (Tr. 19-20.)

Based on this RFC, the ALJ concluded that plaintiff was unable to perform his past relevant work. (Tr. 20-24.) At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act. (Tr. 24-26.)

In evaluating the opinion evidence in this case, the ALJ assigned both treating sources little weight and did not assign any particular weight to the Agency's examining specialist. The ALJ discounted consultative examiner Dr. Leonberger's opinion and declined to assign it any particular weight. The ALJ stated that Dr. Leonberger's opinion was inconsistent with his own exam findings and comments, as well as with plaintiff's daily activities and work activity after his alleged onset date. The ALJ gave treating psychiatrist Dr. Eduardo Garcia's opinion "little" weight because it was inconsistent with his exams and treatment notes, and with the opinion of Dr. Leonberger. The ALJ gave "little" weight to the opinion of treating psychologist Kevin Schuler, Ph.D., on the basis that Schuler had stopped treating plaintiff a year prior to his alleged onset date and failed to specify what period of time his opinion related to. The ALJ also stated Dr. Schuler's opinion was unsupported by contemporaneous treatment notes. The ALJ also stated that Dr. Schuler's opinion that plaintiff was disabled was an issue reserved for the Commissioner. (Tr. 24.)

## V. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the

Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues the ALJ erred in rejecting the opinions of both treating sources, Dr. Eduardo Garcia, his psychiatrist, and Dr. Kevin Schuler, his psychotherapist.[2]  He argues that both opinions were supported by the opinion of consultative examiner Dr. Leonberger.  He contends the ALJ failed to provide sufficient reasons for giving little weight to the opinions of the treating providers, citing as support the factors set forth in § 404.1527 for analyzing the medical opinion evidence.  Plaintiff also argues the ALJ erred in failing to consider the consistency between the opinions themselves.  This court agrees.

**Treating Psychiatrist Eduardo Garcia, M.D.**

Treating psychiatrist Dr. Eduardo Garcia believed that plaintiff had no restrictions in activities of daily living; mild limitations in maintaining social functioning; marked limitation in maintaining concentration, persistence or pace; and marked limitation in episodes of decompensation.  (Tr. 430-32.)

The opinion of a treating physician controls if it is well supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence.  Prosch v. Astrue, 201 F.3d 1010, 1012-13 (8th Cir. 2012) (mirroring language of 20 C.F.R. §§ 404.1527 and 416.927).  The treating source's opinion is not inherently entitled to controlling weight, however.  Blackburn v. Colvin, 761 F.3d 853, 860 (8th Cir.

---

[2]Although plaintiff applied for disability based upon both mental and physical impairments, his appeal focuses exclusively on mental impairments.  Therefore, plaintiff does not contest the ALJ's determinations that his physical impairments were not disabling or that his claims were not entirely credible.

2000). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Unless the treating source's opinion is supported by medically acceptable clinical or diagnostic data, the opinion of a treating physician is entitled to "great weight." Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995). However, the rule is not absolute; a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. See Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007).

The Eighth Circuit generally gives greater weight to the opinion of a specialist about medical issues in the area of specialty. Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010). In assessing a medical opinion, an ALJ may consider factors including the length of the treatment relationship and the frequency of examination, the nature and extent of treatment relationship, supportability with relevant medical evidence, consistency between the opinion and the record as a whole, the physician's status as a specialist, and any other relevant factors brought to the attention of the ALJ. See 20 C.F.R. § 404.1527(c)(1)-(6); Owens v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008) (holding that when a treating physician's opinion is not entitled to controlling weight, the ALJ must consider several factors when assessing the weight to give it). Although an ALJ is not required to discuss all the factors in determining what weight to give a physician's opinion, the ALJ must explain the weight given the opinion and give "good reasons" for doing so. See 20 C.F.R. § 404.1527(c)(2).

The ALJ did not provide good reasons here. The ALJ gave little weight to Dr. Garcia's opinion because it was inconsistent with both his exams and treatment notes. The ALJ noted Dr. Garcia's assessment of marked limitation in maintaining concentration, persistence or pace, and marked limitation in episodes of decompensation was inconsistent with his own treatment notes which reflected that plaintiff was working part-time, was a "house dad" and "busier now than when I worked." (Tr. 23.) The ALJ noted the mental status exam had consistently been unremarkable and repeatedly noted intact attention and concentration, contrary to the medical opinion. The ALJ found Dr.

Garcia's opinion was also inconsistent with the medical opinion of state agency psychology consultant, Dr. Leonberger, whose opinion he had also rejected. (Tr. 23.)

The ALJ, however, neglected to acknowledge that in December 2013 Dr. Garcia noted that plaintiff's condition was worsening. (Tr. 528.) Dr. Garcia also frequently noted plaintiff's decreased concentration. (Tr. 537-39, 541-43.) The ALJ seemingly disregarded the record evidence described above, as well as the variable nature of mental impairments, singling out a treatment note from January 17, 2012, wherein plaintiff reported that he was "busier now than when I worked" while taking care of his elderly father and daughters. The note states: plaintiff "[has] a lot on his plate." He was "very busy with trying to get disability and being a house dad." He was "busier now than when he worked." (Tr. 545.) He had increased shaking and depression. He had stopped taking his medications about three weeks earlier. He still exhibited a depressed mood with "ok" concentration at that time. The ALJ's statement overlooked much of plaintiff's statement to Dr. Garcia. Dr. Garcia also instructed plaintiff to not stop medications without discussing it with him first. (Tr. 545.)

Based on all of the above, the ALJ's use of Dr. Garcia's opinion is not supported by substantial evidence in the record.

**Treating Psychologist Kevin Schuler, Ph.D.**

The ALJ gave little weight to the opinion of treating psychologist Kevin Schuler, Ph.D. The ALJ gave his opinion little weight because Dr. Schuler had stopped treating plaintiff a year prior to his alleged onset date, failed to specify what period of time his opinion related to, and his opinion was unsupported by contemporaneous treatment notes and was inconsistent with relevant evidence during the alleged period of disability. The ALJ also stated that Dr. Schuler's opinion that plaintiff was disabled was an issue reserved for the Commissioner. (Tr. 24.)

This court agrees that Dr. Schuler's opinion that plaintiff was disabled is an issue reserved for the Commissioner. See Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir.

2006). However, the regulations require that such opinions must never be ignored and should be evaluated alongside all of the record evidence to determine the extent to which it is supported. 20 C.F.R. § 404.1527; SSR 96-5p. Social Security Ruling 96-5p states "because treating source evidence is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion." (Id.) The ALJ did not do so here.

In his February 3, 2014 correspondence, Dr. Schuler stated that his diagnostic impression was recurrent major depressive affective disorder and anxiety disorder. He assigned a GAF score of 45, indicating "serious" symptoms. He stated that plaintiff suffered from severe symptoms of anxiety and depression and recurring panic and suicidal episodes that were "extremely resistant to treatment." (Tr. 448.) Although Dr. Schuler stopped treating plaintiff in 2010, prior to his August 30, 2011 alleged onset date, his opinion is arguably longitudinal evidence consistent with Dr. Garcia's opinion.

The regulations require that consistency of opinions be considered in evaluating opinion evidence. The more consistent an opinion is with the record as a whole, the more weight is given to that opinion. See 20 C.F.R. § 404.1527(c)(4). In this case, however, there are other medical opinions and Dr. Schuler's opinion is consistent with them. The record evidence indicated two suicide attempts after plaintiff's alleged onset date and the consistent opinions of plaintiff's treating specialist and the state agency's examining specialist that plaintiff would suffer episodes of deterioration or decompensation in work or a work- like setting. However, the ALJ only discussed these suicidal episodes at Step 2 in finding that plaintiff suffered from polysubstance abuse disorder. (Tr. 17.)

Based on all of the above, the ALJ's utilization of Dr. Schuler's opinion was not supported by substantial evidence in the record.

### Consultative Neuropsychologist F. Timothy Leonberger, Ph.D.

Plaintiff next argues the ALJ erred in weighing the opinion of consultative neuropsychologist F. Timothy Leonberger, Ph.D.. He contends the ALJ failed to consider Dr. Leonberger's expertise in psychology and status as an expert in disability evaluation and Social Security disability. He contends the ALJ formed his own opinion of the medical evidence instead of relying on the interpretation of a treating source. This court agrees.

The ALJ stated that he considered Dr. Leonberger's opinion. The ALJ found Dr. Leonberger's functional assessment "sharply inconsistent" with his own clinical examination. (Tr. 23.) The ALJ noted that while Dr. Leonberger found that plaintiff had mild to marked limitations in social functioning and activities of daily living, Dr. Leonberger noted plaintiff seemed to be able to do quite a lot, despite his complaints. (Tr. 274.) The ALJ noted that plaintiff's performance on the simple cognitive exam, his logical thought process, and fair attention and concentration, all suggested that plaintiff had a greater capacity than found by Dr. Leonberger. (Tr. 23, 273-74.)

The ALJ did not state the weight he gave Dr. Leonberger's opinion. This alone, however, is not error. An ALJ is not required to state the amount of weight given, but need only clarify the reasons the opinion was discounted. Cf. Grabel v. Colvin, 770 F.3d 1196, 1201-02 (8th Cir. 2014); see also 20 C.F.R. § 404.1527 (listing factors to be weighed).

The opinion of a consulting medical expert may constitute substantial evidence to refute a treating expert's opinion. And when the one time consultant disagrees with the treating expert, the ALJ has the right to resolve the conflict between the opinions. Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). It is the ALJ's function generally to resolve conflicts among the opinions of various treating and examining experts. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012).

Here, however, Dr. Leonberger confirmed the opinions of plaintiff's treating mental health sources. See 20 C.F.R. § 404.1527(c)(4) (requiring consideration of the consistency of the opinions of record when weighing them). The ALJ asserted that the

limitations in Dr. Leonberger's opinion were inconsistent with his own exam findings and comments. (Tr. 23.) Contrary to the ALJ's assertion, Dr. Leonberger's exam findings are consistent with his observations that plaintiff was apathetic, unmotivated and chronically depressed. (Tr. 273.) Dr. Leonberger diagnosed plaintiff with major depressive disorder, anxiety disorder, personality disorder, and assigned a GAF score of 50. He believed that plaintiff was incapable of handling his own money. Dr. Leonberger noted that despite getting together with friends to play music, plaintiff did not socialize very often, and plaintiff's wife stated that plaintiff's anxiety put a damper on their social life. Dr. Leonberger also observed that plaintiff spoke in a droning tone with subdued affect and rarely made eye contact. (Tr. 273.) While Dr. Leonberger noted plaintiff performed adequately on measures of attention and concentration, he stated his "persistence and pace appears to be quite poor and is affected by his psychiatric state and subjective experience of pain." (Tr. 274.) The ALJ noted plaintiff was able to perform simple calculations although Dr. Leonberger noted that "he did so very slowly." (Tr. 23, 273.)

The ALJ also concluded that Dr. Leonberger's opinion was inconsistent with plaintiff's daily activities. (Tr. 23.) However, sporadic activities do not support an ability to work on a full-time, remunerative basis. See SSR 96-8p (the Agency's full-time work rule; analysis for determining a claimant's residual functional capacity); Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004) (claimant's ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity). Finally, the ALJ concluded that Dr. Leonberger's opinion was inconsistent with plaintiff's work activity after his alleged onset date. However, this conclusion is entirely speculative since--as the ALJ acknowledged-- plaintiff's part-time work at a church was of an undetermined amount and did not meet the regulatory threshold of substantial gainful activity. (Tr. 15.)

Based on all of the above, the ALJ's utilization of Dr. Leonberger's opinion was not supported by substantial evidence in the record.

The opinions of Drs. Leonberger, Schuler, and Garcia are consistent with the underlying evidence including multiple suicide attempts.  Cf. Cline v. Colvin, 771 F.3d 1098, 1103 (8th Cir. 2014) (it is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians.)  This court concludes the ALJ failed to provide sufficient reasons for giving little weight to the uncontradicted opinions of treating sources and to reject Dr. Leonberger's functional limitations.

For all of the above reasons, this court concludes the ALJ's decision to reject the opinions of plaintiff's treating and examining sources was not supported by substantial evidence on the record as a whole.

## VI.  CONCLUSION

Accordingly, for the reasons set forth above, the decision of the Commissioner of Social Security is reversed and remanded.  The action is remanded to the Commissioner with directions for the ALJ to reevaluate the treating and consulting sources medical opinions and provide principled reasons for granting these opinions either substantial or little weight, comporting with the requirements of 20 C.F.R. § 404.1527(d)(2).  An appropriate Judgment and Order is issued herewith.


　　　　　　　　　　　　　　　　　　　　 S/   David D. Noce          
**UNITED STATES MAGISTRATE JUDGE**


Signed on January 19, 2017.